**Opinion filed October 23, 2008**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-07-00302-CR, 11-07-00303-CR, & 11-07-00304-CR

_____

## ROBERT LEE HIGHLAND, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 415th District Court**

**Parker County, Texas**

**Trial Court Cause Nos. CR06-0605, CR06-0606, CR06-0607**

## M E M O R A N D U M   O P I N I O N

The trial court convicted Robert Lee Highland, upon his pleas of guilty, of three offenses of aggravated sexual assault of a child. The jury assessed his punishment at confinement for life for each offense. We affirm.

### I. *Background Facts*

The State alleged that on three separate occasions Highland engaged in a number of sexual acts with a female victim who was younger than fourteen years of age. After jury selection and before the start of the evidence, the trial court discussed with counsel evidence the State anticipated

it would offer. The State advised the court that, during the execution of a search warrant, a shoe box full of VHS and eight-millimeter tapes depicting child pornography and involving Highland and the victim were found. The State indicated its intent to offer the tapes into evidence and to play a five-minute clip of material from these tapes for the jury. Highland responded that he would object to the video because of improper authentication, because any probative value would be outweighed by its unfair prejudice, and because it was cumulative. The State argued that the material was admissible to show the jury the nature of the offense itself and because possession of child pornography is an extraneous offense. The trial court asked both sides clarification questions, and Highland advised the court that he was not objecting to the entirety of the State's video offer but only to the clip the State intended to play for the jury because it violated TEX. R. EVID. 901. The State also indicated its intent to offer a photo album with Polaroid pictures taken by Highland and 350 CDs. Highland stated that his only objection to these was to any picture of himself and the victim. Highland contended that the State was required to authenticate them with evidence that they were, in fact, pictures of the victim. The trial court deferred any ruling on admissibility of the evidence until trial.

The State's first witness was Special Agent Lori A. Keefer with the Federal Bureau of Investigation. Agent Keefer testified that her responsibilities included child pornography cases and crimes against children. Agent Keefer testified that the FBI and Immigrations and Customs Enforcement Agency suspected Highland was purchasing child pornography. The FBI obtained a search warrant for Highland's home. Agent Keefer executed the warrant when Highland was home. He admitted to her that he possessed child pornography. During the search, Agent Keefer found two photo albums with Polaroid pictures in a safe in Highland's bedroom closet.

When the State offered the two photo albums into evidence, Highland requested the opportunity to voir dire Agent Keefer. On voir dire, Agent Keefer testified that she believed Highland had taken the pictures but agreed that she had no personal knowledge of this. Highland's voir dire examination then continued:

Q.     Okay. And do you know when these photos were taken?

A.     I know from my identification of the victim and by interviews that
        I've conducted, actually, with Mr. Highland's daughter, with the

2

victim, and with the victim's family members, of what her age is in the photo albums.

Q. Right. So based on that, you know or you were able to identify who was in these pictures based on what somebody told you; is that right?

A. Well, actually, the day of the search warrant when we found the photos – when we found the two photo albums, my initial thought was that it was two different girls that were depicted in the photos, and I thought that it could possibly have been his two daughters. His daughter . . . ended up arriving at the residence that day and I showed her the photographs and she identified A.C. as being the girl depicted in the photos. And I later found A.C. and showed her the photographs, and she identified herself as being who is depicted in the photos.

Q. Right, all of which you had no personal knowledge of. They were identified by other people or what people told you?

A. Correct.

Highland then objected to the admission of the photo albums, contending that the proper predicate had not been laid because Agent Keefer had no personal knowledge concerning the photographs. The trial court overruled Highland's objection and admitted the photo albums. Highland then asked for, and received, permission to lodge an additional objection to the admission of the photographs. Highland objected to the photographs because their probative value was substantially outweighed by the danger of unfair prejudice, because the photographs were cumulative, and because "it's [a] violation of the Sixth Amendment right to confrontation as well as violation of Crawford."[1] The trial court responded that its ruling would stand.

The State continued its examination of Agent Keefer. She testified that, in some of the videos taken from Highland's house, A.C. appeared to be "basically passed out." The State then asked Agent Keefer:

Q. Did you take the opportunity to see how passed out she was or how unconscious she was?

---

[1]*Crawford v. Washington*, 541 U.S. 36 (2004).

3

A.    Yes.  We were very concerned because during some of the sex acts, the victim is totally unresponsive and we suspected that she was given something and we didn't know what she might have been given.  I have a coworker who was a former nurse, and she counted the number of breaths A.C. took during a sequence in the video.  And she's barely taking nine to twelve breaths a minute which she said is borderline unresponsive.  But in talking to witnesses in the case –

Highland objected to this testimony as hearsay.  The trial court overruled the objection.  Following the completion of the evidence, the jury assessed Highland's punishment at confinement for life for each indictment.

## II. *Issue*

Highland challenges his sentence with a single issue contending the trial court abused its discretion by overruling his objections to Agent Keefer's testimony.

## III. *Standard of Review*

We review the trial court's admission of evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  A trial court does not abuse its discretion if its ruling is within the zone of reasonable disagreement.  *Id*.  We will uphold a trial court's evidentiary ruling if it is reasonably supported by the record and is correct under any theory of applicable law.  *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).  If evidence is admitted in error, we must then conduct a harmless error analysis.  TEX. R. APP. P. 44.2.

## IV. *Discussion*

Although presented in a single issue, Highland's appeal implicates two decisions by the trial court.  We will address these decisions separately, starting first with the trial court's decision to overrule Highland's objection to testimony that the victim appeared unresponsive in some of the videos.  The only objection Highland made to this testimony at trial and thus the only issue we will consider on appeal is whether this testimony was hearsay.

Agent Keefer's testimony that the victim appeared unresponsive during some of the sex acts is not hearsay because it was her personal observation after watching the videos, but her testimony that a coworker said the victim was borderline unresponsive because she was taking only nine to twelve breaths a minute is hearsay.  *See* TEX. R. EVID. 801(d).  This is nonconstitutional error and,

thus, must be disregarded unless it affected Highland's substantial rights. Rule 44.2(b). We find that it did not.

The jury knew that Highland had pleaded guilty to three indictments alleging aggravated sexual assault. Each indictment alleged multiple acts of sexual assault by Highland against the victim. Agent Keefer's testimony advised the jury that on some occasions the victim was borderline unresponsive and, thus, added the allegation that Highland also drugged the victim. After Agent Keefer testified, the State called the victim's younger sister as a witness. She testified without objection that she and her sister spent considerable time with Highland's daughter at his house and that he frequently provided them with alcohol. At the time, she was seven to nine years old, and her sister was eight to ten years old. She testified that Highland would purchase two six-packs of wine coolers and that she and Highland's daughter would drink one and the victim would drink the other by herself. This resulted in her sister getting "more drunk than what she should have been." This testimony rendered any prior error harmless.

We next consider Agent Keefer's voir dire testimony. Highland's brief characterizes his trial objection as an objection to Agent Keefer's testimony, but the transcript reveals that he was actually objecting to the admission of the photo albums. Agent Keefer's testimony that Highland's daughter and A.C. identified themselves in the photographs was hearsay; however, Highland did not object in response to this testimony. He instead asked an additional question to confirm that Agent Keefer had no personal knowledge of the identity of the people in the photographs and then, consistently with the position he articulated prior to the start of the evidence, objected because "the proper predicate [had] not been laid with respect to these photo albums." When that objection was overruled, he asked for permission to "lodge another objection to the admittance of these video -- of these photographs in addition to my previous objection under Rule 901." Highland's trial objection to the photo albums did not preserve the objection to Agent Keefer's prior testimony that he raises in his brief.

Regardless, any error would be harmless. Agent Keefer's testimony established the extraneous offense of possession of child pornography – an allegation Highland does not contest. Highland admitted to Agent Keefer that he had child pornography when she executed the search warrant. In addition to the two photo albums, the State's evidence included eighteen videotapes,

5

over 300 computer disks (containing 100,000 to 125,000 child pornography images), seven floppy disks, and a variety of other child-pornography related material. Each of these exhibits was introduced without objection. In light of this overwhelming evidence of possession, any evidence of the identity of the subjects would not affect Highland's substantial rights.

The fact that Agent Keefer testified that she knew the identity of the subjects in the photo albums from her conversations with the victim and Highland's daughter does not alter the analysis. Other testimony establishing that Highland's child pornography collection included pictures of the victim and Highland's daughter was introduced without objection. Agent Keefer testified that she met with both the victim and Highland's daughter during her investigation. She also testified that she viewed the VHS tapes and eight-millimeter tapes found in Highland's closet. Agent Keefer testified that Highland appeared on some of the tapes and that both the victim and Highland's daughter could be seen on some of them. During trial, Highland's daughter was shown a portion of one of the videos and confirmed that it depicted herself and the victim. Because this testimony and evidence came in without objection, there was no harm in admitting Agent Keefer's description of her conversations with the victim and Highland's daughter. Highland's issue is overruled.

## V. *Holding*

The judgments of the trial court are affirmed.


RICK STRANGE

JUSTICE


October 23, 2008

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

6